**HOECHST CELANESE CORPORATION and Celanese Engineering Resins, Inc., corporations of the State of Delaware, Plaintiffs,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., Defendants.**

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, et al., Third–Party Plaintiffs,**

v.

**CENTAUR INSURANCE COMPANY, et al., Third–Party Defendants.**

Superior Court of Delaware,
New Castle County.

Submitted: April 16, 1992.
Decided: April 21, 1992.

Richard E. Poole, David J. Baldwin, and William R. Denny of Potter, Anderson & Corroon, Wilmington, for plaintiffs.

Howard M. Berg, Paul Cottrell, and Diane J. Bartels of Berg, Tighe & Cottrell, Wilmington, coordinating defense counsel.

Rachel B. Mersky of Walsh and Monzack, Wilmington, for non-party witness Ins. Service Office, Inc.

## OPINION

GEBELEIN, Judge.

This is the Court's decision on the motion of plaintiffs Hoechst Celanese Corporation and Celanese Engineering Resins, Inc. (collectively "HCC") to enforce a subpoena *duces tecum* directed to Insurance Services Office, Inc. ("ISO") under Rule 30(b)(6).

ISO is an association of more than 1400 property and casualty insurers which provides a number of services to the insurance industry, including the drafting of advisory insurance policy forms and endorsements for use in writing policies. The close relationship and interdependence between ISO and its "member" and "subscriber" insurers are detailed in *In re Insurance Antitrust Litigation*, 723 F.Supp. 464, 468–70 (N.D.Cal.1989), *rev'd* 938 F.2d 919, 923–924 (9th Cir.1991), *petition for cert. filed* (U.S.). It is sufficient for the purposes of this decision to note that most if not all insurers use ISO standard-form language in their policies [1] and that insurers are frequent participants in the drafting process. *Id.*

ISO issues its forms periodically, and each issuance contains revisions of previous forms. ISO has issued standard forms in 1946, 1955, 1973, 1984, and 1986. After developing a standard form, ISO files it with state insurance commissioners on behalf of ISO-participating insurers. ISO interprets the standard forms for state regulators and works with regulators and trade and consumer groups to ensure their acceptance.

In 1984, ISO prepared and filed for approval two new standard forms for commercial general liability (CGL) insurance: (1) an "occurrence" policy form, and (2) a "claims-made" policy form. The new policy forms were designed to replace a standard form for general liability insurance which originated in 1973. After lengthy hearings and several revisions of the new forms, ISO released the new forms for use effective January 1, 1986.

HCC's primary insurer during the periods in question in this litigation was National Union Fire Insurance Company of Pittsburgh, Pennsylvania ("National Union"). National Union, like many of the other insurer defendants, used ISO standard form language in the policies issued to HCC which are the subject of this action. For example, the 1985–86 National Union "occurrence" policy contains language nearly identical to that of the ISO standard form first developed in 1973 and bears the notation "Copyright Insurance Services Office, Inc., 1982, 1984." The 1987–88 National Union "claims-made" policy contains language identical to that of the ISO "claims-made" standard form effective in 1986, and bears ISO policy form numbers.

In light of the defendant insurers' use of ISO forms, HCC seeks drafting history and interpretive material from ISO regarding the ISO forms and language used in the policies issued to HCC and at issue here. Since ISO is headquartered in New York and maintains its documents there, HCC sought a commission pursuant to Superior Court Civil Rule 45(d) to obtain a New York subpoena *ad testificandum* and *duces tecum*. This subpoena would permit HCC to take a 30(b)(6) deposition from an ISO records custodian and to obtain the production of responsive documents. This

---

1. ISO points out that their drafting is advisory and that "insurance companies are free to use, to reject, to modify, or even to give their own interpretation to ISO advisory form language if they wish." As a practical matter, however, most insurers do in fact use ISO language nearly or completely verbatim and concerns about the language are likely to be expressed during the ISO drafting process rather than by non-use of the ISO standard form once promulgated.

Court granted the commission on March 2, 1990 and the New York Supreme Court issued a subpoena which was served upon ISO on March 21, 1990.

ISO produced approximately 250,000 to 275,000 pages of responsive documents, which had been previously collected for production by ISO and contained material related to the development of CGL language prior to March of 1983 and pollution coverage and exclusion language prior to December 1985. However, ISO objected to the production of documents which had not yet been collected (post–1983 CGL material and post–1985 pollution-related material), contending *inter alia* that the requests sought irrelevant materials and were overly broad and burdensome. HCC repeated its request for the collection and production of post–1983 CGL documents. During the following five and one-half months, the parties corresponded regarding related matters. However, ISO did not produce the additional material requested and HCC did not proceed with a motion to compel. HCC then sent counsel for ISO copies of two Delaware cases in support of their assertion that the drafting history sought is relevant. ISO continued to request that HCC make some showing that the later material was specifically relevant to language in the HCC policies and refused to make production absent such a showing. HCC then warned ISO that it would file a motion to compel if ISO did not comply within 10 days. ISO did not comply. However, HCC again failed to file a motion to compel and took no further action regarding the ISO request for seven months.

Finally, in June of 1991, more than fourteen months after the original subpoena, HCC again raised the issue. After a brief flurry of correspondence in which both parties reasserted their positions, HCC filed a motion to compel in New York on June 14, 1991.

On October 24, 1991, after briefing and oral argument, the New York Supreme Court ordered ISO to comply with the subpoena as follows:

ISO shall produce to HCC all documents created or generated by, or in the possession of, ISO relating to the drafting, development ... of any ISO form insurance policy that contains basic ISO standard form CGL policy language or terms at issue in the underlying Delaware action

...

... as a prerequisite to ISO's compliance ... HCC shall provide ISO with a copy of an insurance policy at issue for each of the years 1978–1989 ... that contains basic ISO standard form policy language or terms, and for which HCC seeks production ... [This] shall be a copy of the policy from the master policy file ...

... ISO's attorneys, Mayer, Brown & Platt ... shall designate a lawyer from that firm who will testify regarding [that firm's] knowledge as custodian of documents for ISO since ... 1983.

HCC provided the New York court with a comparison of language in policies issued to HCC with language contained in ISO standard forms. ISO contends that these comparisons did not satisfy the provisions of the order. In any event, ISO appealed the New York court's decision to the Appellate Division and obtained a stay of enforcement of the order directing ISO to comply with the subpoena. HCC and ISO are currently in the process of briefing the appeal, which is scheduled to be heard during the May 1992 term.

At some point during the New York proceedings, counsel for HCC apparently realized for the first time that ISO is licensed to do business in all fifty states and maintains an agent in Delaware for service of process in Delaware. This information was contained in an affidavit which was among the materials produced to HCC by ISO in April of 1990. After ISO appealed the New York discovery order, HCC served a Delaware subpoena on ISO through its registered agent requesting that it produce a Rule 30(b)(6) witness to testify regarding certain subjects and produce documents responsive to seven document requests. Although slightly different in form, the Dela-

ware subpoena seeks substantially the same testimony and materials as the New York subpoena.[2] ISO objected to the subpoena by letter to HCC, raising a number of substantive objections and asserting that because of the New York proceedings, HCC was estopped on various theories from proceeding in Delaware. HCC then filed a motion to enforce the Delaware subpoena.

ISO's objections to the subpoena fall into several broad categories and each will be dealt with separately.

### Relevance of Materials Sought by HCC and HCC's Need for Materials

ISO contends, as it did in the New York proceedings, that the post–1983 CGL/post–1985 pollution drafting history and interpretive materials sought by HCC need not be produced because they are not relevant to the policy language at issue in this litigation. As previously noted, ISO asserts that it has produced all previously collected documents which cover a period through March of 1983 generally and through December of 1985 with respect to pollution exclusion/pollution liability language. ISO argues that the developmental materials requested by HCC pertain to language in the policies which is not in issue in this case, or have already been produced to HCC by ISO or by the defendants. ISO contends that HCC has failed to point to any language in a policy which was developed from an ISO standard form for which developmental history has not been produced. ISO asserts that HCC's request for later material is merely a fishing expedition and should not be permitted absent a showing of specific need.

The Court finds the post–1983 CGL materials to be relevant. The relevance standard at the discovery stage is a lenient one, and HCC is not required to make a showing of need for the specific materials. It is likely that materials in ISO's possession which were not collected earlier would aid in the interpretation of language at issue in this policy, or provide HCC with "leads" to other interpretive material. It is also possible, given the role of insurers in the development of standard form language by ISO, that correspondence between ISO and insurers in this action in ISO's possession may contain admissions regarding the construction of language at issue.[3]

### The Burden and Expense on ISO

ISO contends that compliance with the subpoena, especially in light of its status as a non-party to this action, would be unduly disruptive of ISO's ordinary business, expensive, and burdensome. ISO asserts:

To update the GL drafting history since the last collection dates, ISO would potentially need to survey nearly all of its 1200–plus employees and review personal working files of both past and present employees ... [and] several department files as well as its central files. This project would take months to complete and would drain ISO of not only the valuable time of its employees but significant out-of-pocket costs ...

... Even if Hoechst offered to pay duplicating costs, or even ISO's other out-of-pocket expenses, it could never compensate ISO for the time expended by its employees and counsel ...

---

**2.** HCC also noticed the substantive deposition of ISO by its officer Carole Banfield. ISO moved to quash this subpoena for lack of jurisdiction and improper service of process. At the hearing of ISO's motion on March 9, 1992, this Court ruled that as an officer of ISO, which · does business in Delaware and maintains a Delaware agent for service of process, the deposition of Ms. Banfield was properly noticed and served by service upon that registered agent. *See Less v. Taber Instrument Corp.,* 53 F.R.D. 645 (W.D.N.Y.1971) (personal service upon director

of foreign corporation doing business in the forum unnecessary when corporation properly served).

**3.** For example, an insurer may have written to ISO after 1983 proposing a revision of policy language which is at issue in this language. Even if not adopted into an ISO standard form, the insurer's suggestion might demonstrate the manner in which it interpreted the policy language and would be relevant to this action.

It appears that HCC has expressed its willingness to pay at least some portion of ISO's expenses incurred in complying with the subpoena.

The Court finds that the burden of compliance as described by ISO to be somewhat exaggerated. As the primary entity responsible for drafting standard form language for insurance policies, ISO is a major source of drafting history and must expect numerous similar document requests in insurance coverage actions. Since ISO is in the business of drafting standard forms for insurance policies, the Court considers the maintenance and production of developmental materials a necessary incident to ISO's business. ISO presumably maintains some sort of filing system which will enable it to collect those materials pertinent to the CGL standard forms at issue. The evidence is that ISO is familiar with the process of document production and obviously made a collection of documents previously. A May 1990 deposition of an ISO records custodian appears to bear out HCC's assertion that ISO has the capability to make the production. Therefore any burden on ISO would be outweighed by the relevance and importance of the documents to this litigation.

### The Effect of the New York Proceedings

■ Finally, ISO contends that HCC should not be permitted to proceed with the Delaware subpoena because HCC originally served the subpoena in New York and ISO has been litigating the matter in the New York courts. ISO bases its argument in this regard on several theories including judicial economy, estoppel, *forum non conveniens*, the policy against forum-shopping, and undue burden. HCC responds since the deadline for discovery in this action is November, 1992, and trial is set for June, 1993, the parties are under strict time constraints in the preparation of their cases. HCC contends that even if the New York order in HCC's favor is affirmed, the testimony and documents might be received by HCC too late to be helpful in preparation for depositions or other discovery, and this would hamper HCC's ability to prepare for trial.

The Court is fully cognizant of the concerns raised by ISO. HCC chose New York as a forum in which to conduct discovery and the parties have appeared before the New York courts on this matter and have presumably expended substantial time and money in arguing their positions. The Court recognizes that HCC pursued the matter to a decision in their favor before a New York court in October 1991. However, a review of the correspondence between HCC and ISO reveals that during the fifteen-month period before HCC filed its New York motion to compel, HCC failed to take any prompt or consistent action to follow up on the subpoena. ISO consistently refused to produce certain material. HCC threatened to file a motion to compel, but failed to do so promptly. It appears to the Court that HCC failed to pursue the matter and "sat on its rights" for long periods of time before initiating proceedings to compel discovery in New York. The delay which will arise between October and the resolution of ISO's appeal, which will not be heard until May, is attributable to ISO. However, ISO certainly has a right to take such an appeal, despite its inhibiting effect on the discovery process in this action which is proceeding under tight time constraints.

In the spring of 1990, HCC had two options with respect to discovery of drafting history from ISO. First, HCC could proceed in New York, as it chose to do. When ISO objected to the production of certain material, HCC should have anticipated the time necessary for litigating a motion to compel and a possible appeal. Had HCC done so, it would have promptly filed a motion to compel rather than waiting nearly fifteen months. Had HCC done so, the New York proceedings would likely have been completed by now. HCC's second choice was to proceed with discovery of ISO in Delaware through service on ISO's registered agent. While it is unfortunate that HCC apparently did not realize this option existed until the summer of 1991,

there is no adequate explanation for its failure to do so. The fact that ISO is registered to do business in Delaware was contained in materials produced in the spring of 1990. Moreover, it would not have been a difficult matter for HCC to determine if Delaware service was possible.

HCC could have proceeded with either of these options and avoided the time problem it is faced with now. It chose to pursue discovery of ISO in New York and the parties have engaged in a significant amount of litigation there. HCC will not be permitted to force ISO to go through the same process in Delaware because HCC now finds its first choice to have been unwise. The principles of comity and a concern for judicial economy require that this matter be litigated in one jurisdiction and result in a single, consistent set of decisions. The Court will not address this issue which has been decided once and is now the subject of appellate litigation in the New York courts. HCC must await the decision of the New York court and proceed accordingly.[4,5]

Plaintiffs' motion to enforce the subpoena is DENIED.

IT IS SO ORDERED.

---

4. Pursuant to the commission granted by this Court to HCC to pursue the New York discovery in the first instance, this Court will have jurisdiction to enforce compliance with the discovery requests and to impose sanctions for any "gamesmanship" during the discovery process. Should the New York order compelling ISO to comply be affirmed, ISO will be subject to sanctions for *any* failure to comply fully and promptly with any HCC discovery request.

5. Any decision by the New York courts is unlikely to be received before the May 15, 1992 deadline for notices of depositions. If HCC obtains discovery from ISO, and desires to take a deposition based on information obtained through that discovery, the Court will permit HCC to notice such a deposition after the May 15, 1992 deadline.